Filed 12/18/24  P. v. Johnson CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHIHEIM JOHNSON,<br><br>        Defendant and Appellant. | A169510<br><br>(Alameda County Super. Ct. No. 612650) |

A jury convicted Shiheim Johnson of first degree felony murder with a firearm use enhancement, second degree robbery with a firearm use enhancement, and two counts of unlawful possession of a firearm.  The trial court found true a prior strike allegation.  At sentencing, the trial court struck the prior strike and firearm enhancements and sentenced Johnson to 25 years to life for the murder count, a consecutive five years for the robbery count, and concurrent sentences on the firearm possession counts.  In a prior appeal, we reversed the sentence on the robbery count because a legislative amendment to Penal Code[1]

_____

[1] Undesignated statutory citations are to the Penal Code. Citations to rules are to the California Rules of Court.

1

section 1170, subdivision (b) (section 1170(b)) operated retroactively and created a presumption of a middle term for all sentences and a low term presumption when an offender's childhood trauma is a contributing factor to an offense. (*People v. Johnson* (Sept. 30, 2022, A158418) [nonpub. opn.]; § 1170(b)(2) & (6)(A).) On remand, the trial court imposed a middle term sentence of three years on the robbery count. Johnson again appeals, arguing the trial court failed to properly apply the low term presumption in section 1170(b)(6) and failed to recalculate his custody credits. We agree and therefore vacate Johnson's sentence and remand for resentencing.

## BACKGROUND

"The day before the murder at issue, Joe G. celebrated his birthday with his cousin, Torian H., and his friend Tyron I. Several other people were at his party, some of whom were friends of Joe and some of whom were friends of Tyron. Joe met defendant, a friend of Tyron, at the party.

"The morning after the party, Torian and Joe discussed purchasing a gun. Knowing that Tyron had a gun, Joe contacted him so Torian could arrange to buy the gun. Tyron was to come alone to Joe's house.

"Tyron arrived with defendant, and the four met inside Joe's house. Joe then told everyone to move outside because his parents would be returning home. Once outside, Torian pulled out money to buy the gun, and defendant and Tyron pulled out guns. Tyron pointed his gun at Torian, and defendant pointed his gun at Joe's head. Tyron told Torian and Joe to give them

2

'everything you got.' Torian responded, 'I'm not letting this shit happen to me.' He struck Tyron with his fists. As they struggled, Joe yelled, 'Put the gun down.' On direct examination, Joe testified that, several times, defendant yelled, 'Shoot that [N-word].' On cross-examination, defense counsel impeached Joe with his preliminary hearing testimony wherein Joe described defendant's statements as 'kind of like whispering.' Joe acknowledged the statements were not made as part of a conversation between defendant and Tyron, and Tyron did not respond. Tyron fired a shot that killed Torian, and Tyron and defendant ran. Defendant took money and a cell phone from Joe.

"The District Attorney filed an information charging defendant with murder (§ 187, subd. (a), count 1); second degree robbery (§ 211, count 2); and two counts of possession of a firearm by a prohibited person (§ 29820, subd. (b), counts 3 & 4). The information also alleged enhancements for personal use of a firearm for counts 1 and 2 (§§ 12022.5, subd. (a), 12022.53, subds. (b), (g)), and a prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).

"On count 1, the jury found defendant guilty of first degree felony murder, it found true the allegations that defendant was a major participant who acted with reckless indifference and who personally used a firearm, but it found not true that defendant aided and abetted or assisted in the murder with the intent to kill. On count 2, the jury found defendant guilty and found true that he personally used a firearm. On counts 3 and 4, the jury found defendant guilty. At a bench trial, the court found the

3

prior strike allegation to be true." (*People v. Johnson*, *supra*, A158418.)

In preparation for the sentencing, Johnson presented a report and expert testimony by Dr. Teo Ernst, who conducted a forensic psychological evaluation of Johnson. Johnson had been 19 at the time of the offense. Dr. Ernst concluded that Johnson's functional maturity at the time of the crime was affected by, among other things, brain injury and childhood psychological trauma.

In September 2019, the trial court sentenced Johnson to 25 years to life for the murder count and an upper term of 5 years on the second degree robbery count. Exercising its discretion under section 1385, subdivision (a), the trial court struck Johnson's prior strike and the firearm use enhancement to the murder and robbery counts for the purposes of sentencing. For the unlawful possession of a firearm counts, the trial court imposed concurrent eight-month terms, which was one-third the middle term for each offense. Johnson's total prison term was therefore an indeterminate term of 25 years to life followed by a determinate term of five years.

The trial court explained that it struck the prior strike and enhancements based on Dr. Ernst's report, specifically noting its conclusions about Johnson's age, impaired intellectual functioning, and childhood history of trauma, among other things. The trial court concluded that imposing a sentence under the Three Strikes Law would be unjust and that a sentence of 30 years in prison was commensurate with the crime. As to

4

circumstances in aggravation, the trial court found Johnson's crime involved great violence, great bodily harm, and the threat of great bodily harm (rule 4.421(a)(1)); the victims were particularly vulnerable as unarmed juveniles (rule 4.421(a)(3)); Johnson was convicted of other crimes, for which consecutive sentences could have been imposed but were not (rule 4.421(a)(7)); the manner in which Johnson's crime was carried out indicated planning (rule 4.421(a)(8)); and Johnson's violent conduct indicated he was a danger to society (rule 4.421(b)(1)). For mitigating circumstances under rule 4.423, the trial court found Johnson had significantly impaired intellectual functioning, Johnson's juvenile co-defendant set up the ruse for the robbery and fired the gun that killed the victim, and Johnson had no prior adult convictions. The trial court stated that Johnson had 1,330 days of actual credit.

Johnson appealed. (*People v. Johnson*, *supra*, A158418.) We found no error in his trial. (*Ibid.*) But while Johnson's appeal was pending, the Legislature amended section 1170 to create a presumption that trial courts should impose the middle term of a statutory sentencing triad, unless facts supporting any aggravating circumstances were established by stipulation, proven to the jury (or court, in a bench trial) beyond a reasonable doubt, or based on prior convictions proven by a certified record of conviction. (*Ibid.*; Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c), adding § 1170, subd. (b)(1)–(3), by amendment.) The amendment also created a presumption that a trial court should impose the low term of a sentencing triad if an offender's youth (defined as being

5

under 26 years on the date of the offense) or psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c), adding § 1170, subd. (b)(6)(A)–(B), by amendment.) We remanded Johnson's case to the trial court for resentencing on the robbery count in light of both aspects of the amendment because the trial court had imposed the upper term on that count. (*People v. Johnson*, *supra*, A158418.) We also instructed the trial court to correct its sentencing minute order, which had incorrectly stated that Johnson's 1,330 actual days of presentence credit consisted of 665 days of actual custody credit and 665 days of conduct credits. (*Ibid.*)

On remand, Johnson filed a resentencing motion in which he asked the court to impose the low term based on the presumption in section 1170(b)(6). Johnson highlighted the fact that the presumption applied because of the evidence in Dr. Ernst's report from the original sentencing. Johnson also argued that the mitigating factors exceeded the aggravating factors.

At the subsequent resentencing hearing, the trial court began by stating that resentencing was necessary because of the amendment that created a presumption in favor of the middle term in all cases involving a sentencing triad. The trial court said that it was changing the sentence on the robbery count from the upper term of five years to the middle term of three years

6

while continuing to have it run consecutively to the indeterminate term of 25 years to life. The trial court also stated that Johnson had 1,330 days of actual custody credits as of the original sentencing date.

Johnson's counsel maintained that the court was required to impose the low term under section 1170(b)(6)(A) and said that whatever the sentence on the robbery count, the court should run it concurrently. Johnson's counsel asserted that it was ironic that the actual shooter in the crime was already free because he was a minor at the time of the crime, while Johnson, who was not the shooter, faced a sentence of life in prison. He said the court should impose a sentence of 25 years to life with no consecutive determinate sentence.

Johnson's counsel also asked the court to update the abstract of judgment to reflect total custody credits of 1,633 days. He argued that Johnson was entitled to more credits as of the date of his original sentencing than the trial court had awarded, as well as additional days of credit for time in the jail on the remittitur.

In response, the court first noted that it had exercised its discretion to strike Johnson's prior strike at the original sentencing. It then said, "And I thought based on all of those factors that were set forth in the law in looking at your motion and also looking at Mr. Johnson's background and all of the other aspects of the case, I addressed that pretty extensively in my sentencing script. I went back and looked over the comments that I made, and I recall the time that I spent on sentencing in

this case. So I did take into account Mr. Johnson's childhood trauma, his age, a number of different factors. I don't have all of those papers in front of me, but it was an extensive sentencing hearing taking into account all of those things."

In response to Johnson's argument about the disparity between his sentence and the juvenile shooter's, the trial court noted that the victim had been killed by people he thought were his friends and while he was attempting to buy a weapon to avoid being the victim of robbery. The court said it took into account all of those factors when looking at Johnson's case and the modification that the court made was the modification it stood by.

Regarding credits, the trial court said it wanted Johnson to get all the credits to which he was entitled and urged the Department of Corrections to take note of Johnson's argument. The trial court's minute order said Johnson had a total of 330 actual days in custody at the time of sentencing. The abstract of judgment later showed 1,707 days of actual custody, and the date of sentencing on the form was the date the trial court had originally pronounced sentence, not the date of the resentencing.

## DISCUSSION

### I. Presumption in favor of the low term

Section 1170(b)(1) states, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." As relevant here, paragraph (2) allows a court to impose a sentence exceeding the

8

middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(2).) Section 1170(b)(6) further provides, "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense."

Johnson contends the trial court's findings at the initial sentencing that his youth and childhood trauma contributed to the offense triggered the section 1170(b)(6) presumption in favor of the low term at his resentencing. He contends the trial court was therefore obligated to impose the low term unless it made a finding that the aggravating circumstances outweighed the mitigating circumstances. According to Johnson's interpretation of the trial court's comments, the trial court believed it had satisfied its duty to consider Johnson's childhood trauma by relying on that trauma to justify striking his prior strike at the

9

first sentencing hearing. Johnson argues this reason for imposing the middle term constitutes an abuse of discretion and the trial court failed to conduct the balancing that section 1170(b)(6) requires.

"Discretionary sentencing decisions, such as whether 'the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice' (§ 1170(b)(6)) are reviewed for an abuse of discretion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) " ' "A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*Id.* at p. 424.) However, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361; accord, rule 4.409 [relevant sentencing factors in the Rules of Court "will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

The People do not dispute that Dr. Ernst's report and the trial court's previous findings about Johnson's youth and trauma triggered the presumption in section 1170(b)(6). (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 [there must be "some initial showing" that a defendant's youth was a contributing factor before the record must show compliance with section 1170(b)(6)(B)].) The only question is whether the trial court understood the scope of its discretion and made the necessary

10

finding that the aggravating circumstances outweighed the mitigating circumstances.

We agree with Johnson that the record indicates the trial court was not aware of the constrained nature of its sentencing discretion under section 1170(b)(6). (See *People v. Lynch* (2024) 16 Cal.5th 730, 774 [" ' "[a] court which is unaware of the scope of its discretionary powers [cannot] exercise that 'informed discretion' " ' "].) At the beginning of the hearing, the trial court said that the resentencing was necessary because of the amendment to section 1170(b) that mandated a term no higher than the middle term unless the facts supporting aggravating circumstances are established by defendant's stipulation, jury findings, or a certified record of a prior conviction. Notably absent from the trial court's statement is any mention of section 1170(b)(6)'s presumption favoring the low term when a defendant's youth or childhood trauma is a contributing factor to the offense. (§ 1170(b)(6)(A)–(B).) Our prior opinion cited both presumptions. (*People v. Johnson*, *supra*, A158418.) The People are correct that we will presume a trial court knows and applies the correct law, but this presumption only applies "[i]n the absence of evidence to the contrary." (*People v. Thomas*, *supra*, 52 Cal.4th at p. 361.) The trial court's statement that resentencing was necessary because of section 1170(b)(2)'s cap on the middle term (in the absence of stipulation, jury findings, or a prior conviction), while not mentioning the low-term presumption under section 1170(b)(6), indicates that the trial court was unaware of the latter provision and rebuts the presumption that

11

the trial court was applying the correct law. The court's failure to mention section 1170(b)(6) is particularly suggestive because at the original sentencing, the court referenced Johnson's childhood trauma when it relied on section 1385, subdivision (a) to strike a prior strike and a firearm enhancement. Given the record of the 2019 sentencing, which the trial court said it reviewed, there is no evident reason why the trial court would not have mentioned section 1170(b)(6) as well as section 1170(b)(2) at the resentencing hearing.

The People point out that Johnson's resentencing motion cited section 1170(b)(6)(A) in arguing that the trial court was obligated to impose the low term because of the presumption and because the aggravating factors did not outweigh the mitigating factors. The trial court indicated that it read Johnson's motion, referring to "all of those factors that were set forth in the law in looking at your motion." In the abstract, the fact that Johnson cited the correct law and the trial court read it would support an inference that the trial court understood the new nature of its discretion. But notwithstanding Johnson's resentencing motion, the trial court began the hearing by discussing only section 1170(b)(2)'s ceiling on the middle term in the absence of defendant's stipulation, jury findings, or a certified record of a prior conviction, and did not mention that Johnson's youth and trauma supported a low-term presumption under section 1170(b)(6). Accordingly, Johnson's written motion does not convince us that we should presume the trial court understood

12

the import of section 1170(b)(6) and its changes to the required sentencing analysis.

Moreover, after Johnson's counsel argued in favor of the low term pursuant to section 1170(b)(6)(A) during the resentencing hearing, the trial court's statements suggest it believed it did not need to consider Johnson's youth and trauma under section 1170(b)(6) because it had already "take[n] into account Mr. Johnson's childhood trauma [and] his age" and "all of those factors that were set forth" in Johnson's motion when, in 2019, it struck the prior strike and declined to sentence Johnson to the 50 years to life sentence "he could have had." Contrary to respondent's contention, these comments indicate that the trial court misunderstood its more limited sentencing discretion under amended section 1170(b), and in particular the weight that must be given to a defendant's youth and childhood trauma under section 1170(b)(6). (See *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421 [although we assume trial court knew and applied the governing law, remand is appropriate when the record indicates the court misunderstood the scope of its discretionary powers]; *In re White* (2020) 9 Cal.5th 455, 470 [abuse of discretion occurs when trial court "fails to consider a relevant factor that deserves significant weight"].) We construe the court's comments to mean that the court believed it had sufficiently addressed Johnson's traumatic childhood when it struck his prior conviction and thereby reduced his indeterminate sentence. But section 1170(b)(6) governs determinate sentences. It does not state that the presumption favoring the low term is inapplicable if a trial

13

court gives a defendant a lower indeterminate sentence due to childhood trauma.

Nor can we construe the trial court's reference to its prior sentencing comments as meaning it was increasing Johnson's punishment from the presumptive low term to the middle term based on the same balancing of aggravating and mitigating factors that it had previously used to impose the upper term at the original sentencing. If the trial court had meant that it was adhering to the same balance of aggravating and mitigating circumstances as at the original sentencing, it seems more likely that it would have mentioned the aggravating factors in some fashion as overcoming the presumption, rather than using oblique, catchall references to "all of the other aspects of the case" or "a number of different factors."

In any event, the trial court could not have intended to re-adopt its prior balancing of aggravating and mitigating circumstances to satisfy section 1170(b)(6) because the trial court did not identify Johnson's age or childhood trauma as mitigating factors at the original sentencing. At the time of the original sentencing in September 2019, rule 4.423 did not expressly identify youth or childhood trauma as mitigating factors. (Former rule 4.423(b).) It was not until March 2022 that rule 4.423 was amended to include as mitigating factors the defendant's youth at the time of the crime (rule 4.423(b)(6)) and the defendant's experience of childhood trauma that was a factor in the commission of the crime (rule 4.423(b)(3)). Not surprisingly, then, when the trial court specified the rule 4.423

14

mitigating factors it considered in September 2019, it noted only Johnson's impaired intellectual functioning, his lack of prior adult convictions, and the fact that it was the juvenile participant, not Johnson, who set up the robbery and fired the gun. The trial court must have known at the resentencing that it had not previously listed Johnson's youth or trauma as mitigating factors because it said that it "went back and looked over the comments" it had made at the original sentencing. Because the trial court did not previously identify Johnson's youth or childhood trauma as mitigating factors, much less identify them as the " 'super mitigants' " (Baggett et al., California Criminal Law Procedure and Practice (Cont.Ed.Bar 2024) §§ 37.5, 37.10) they are now under section 1170(b)(6), it could not have incorporated by reference its prior balancing of those factors against the aggravating circumstances to satisfy the statute and impose the middle term here.

Finally, the People contend the trial court identified various aggravating factors at the resentencing, specifically the facts that the crime was tragic in that a young man lost his life, the victim trusted Johnson and his co-participant, and Johnson and his co-participant did the same thing to the victim that the victim was trying to buy a gun to avoid. The People also cite the trial court's comment towards the end of its remarks, "So I took into account all of those factors when looking at Mr. Johnson's case," and its conclusion, "the modification that I made are the modifications that I stand by." These remarks do not change the analysis. It does not appear from the transcript that the trial

15

court was relying on the circumstances it highlighted to justify the middle term in the face of the section 1170(b)(6) presumption. Rather, the trial court described the crime and made its concluding statements in response to Johnson's counsel's argument that the robbery term should not run consecutively to the indeterminate term because Johnson's co-participant, who was the actual shooter, was a juvenile and therefore already free while Johnson received a much lengthier sentence.

In a related vein, the People argue that any error was harmless because the record shows the trial court would have reached the same conclusion regardless of whether it was aware of the low term presumption. The People cite the standard from *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391, which states that when a trial court was unaware of the scope of its sentencing discretion because the discretion was changed by a later retroactive change in the law, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' "

We agree that the *Gutierrez* standard of prejudice applies here. Our Supreme Court recently stated in *People v. Lynch*, *supra*, 16 Cal.5th at page 773, that "the *Gutierrez* standard applies to sentences imposed before [section 1170(b)'s] 2022 amendment *or when the record otherwise indicates* that the court has not exercised its ' " 'informed discretion.' " ' "  (Italics added.) Following *Lynch*, we must apply the *Gutierrez* standard here because, although the new law was in effect at the time of the

16

resentencing, the record indicates that the trial court was not exercising its informed discretion.  We also note that *Lynch* reaffirmed that " 'it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.' " (*Id.* at p. 774.)  The Supreme Court thus appears to have intended *Gutierrez*'s "clearly indicates" standard to be difficult to meet, to avoid speculation.

The record here does not clearly indicate that the trial court would have imposed a middle term even if it had been aware of the presumption favoring the low term.  The trial court did emphasize that it had taken account of Johnson's youth and trauma when it originally sentenced him.  But as discussed *ante*, the trial court did not apply those factors specifically to the robbery conviction, nor did it ever indicate that the aggravating circumstances were so strong as to make the imposition of the presumptive low term "contrary to the interests of justice." (§ 1170(b)(6).)  The trial court's previous balancing of factors without the low-term presumption says little about whether it would reach the same result if it had recognized that the low term was presumptively appropriate.  A remand for resentencing is therefore required.

The fact that we are remanding this case again for resentencing should not be construed as an indication of our views on the proper determinate sentence for Johnson.  We express no opinion on that question.  We hold only that Johnson is entitled to a sentence from the trial court that reflects its

17

exercise of informed discretion under the low-term presumption imposed by section 1170(b)(6).  The record does not show that this has yet occurred.

## II.    Custody credits

Johnson separately argues the trial court erred by not updating the calculation of his custody credits at the resentencing hearing.  He argues he is entitled to 2,873 days of actual custody time prior to his resentencing.

"[W]hen a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence all actual time the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody."  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29, italics omitted; see *People v. Dean* (2024) 99 Cal.App.5th 391, 396–397 [at resentencing, trial court should update calculation of actual custody credits but not conduct credits].)  We therefore agree with Johnson that the trial court should have recalculated his actual custody credits at the resentencing, rather than urging the Department of Corrections and Rehabilitation to take note of Johnson's contentions about his credits.  Because we are remanding to the trial court for resentencing, we will instruct the trial court to recalculate the amount of Johnson's actual custody credits as of the date of the new resentencing and prepare an amended minute order and abstract of judgment.

18

## DISPOSITION

Johnson's determinate sentence is vacated. The matter is remanded to the trial court to resentence Johnson on the determinate portion of his sentence under section 1170 and recalculate his actual custody credits as of the date of resentencing. The trial court is directed to prepare an amended determinate abstract of judgment reflecting the new sentence and custody credits and to send certified copies of the new abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
SIMONDS, J.*

*People v. Johnson* (A169510)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.